## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| CLARA COHAN and SHARON BALZER individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:14-mn-00001-DCN No. 2:14-mn-03704-DCN |
| vs. | ) ) ) | **ORDER** |
| PELLA CORPORATION, | ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court on a motion to dismiss brought by defendant Pella Corporation ("Pella"). For the reasons set forth below, the court grants in part and denies in part Pella's motion to dismiss.

## I.  BACKGROUND

Plaintiffs Clara Cohan and Sharon Balzer (collectively "plaintiffs") purchased Pella windows during the renovation process of their home in Cape Elizabeth, Maine. Compl. ¶ 53. Plaintiffs allege that they went to a Pella location at 242 Gorham Road in South Portland, Maine and spoke with a Pella representative who "assisted them in choosing" the windows, "answered Plaintiffs' questions and touted the features and quality of Pella Windows." Id. Plaintiffs further allege that the Pella sales representative who provided assistance was Peter Dardano and that before they purchased the windows, they "conducted extensive research about Pella Windows, reviewing Pella's website, pamphlets, product brochures and other marketing materials." Id. ¶¶ 54–55. According to the complaint, plaintiffs purchased Architect Series windows from Pella in April 2001 in reliance on the Pella representative's representations. Id. ¶ 57.

1

In June 2010, plaintiffs noticed that the frame on one of their bedroom windows "rotted and fell apart" and filed a claim under a limited warranty provided at the time of sale. Id. ¶ 61.  In August 2010, a Pella representative, referred to as "Dave" in the complaint, went to plaintiffs' home and informed plaintiffs that the window's edges were unpainted, "which allowed water penetration resulting in wood rot."  Id. ¶¶ 62–63. Plaintiffs further allege that after inspecting the remaining windows in the home, Dave informed plaintiffs that every casement window contained unpainted edges and that plaintiffs should have painted the edges of the windows during installation "even though Pella sold Plaintiffs factory painted windows."  Id. ¶ 64.  Dave agreed to replace the bedroom window in exchange for a $95.00 labor charge and "promised to provide Plaintiffs with gaskets for three Windows."  Id. ¶ 65.  Pella replaced the bedroom window and provided plaintiffs with three replacement gaskets as promised.  Id. ¶ 66.

On August 10, 2010, plaintiffs filed a second claim under the limited warranty requesting that Pella paint the edges of the windows.  Id. ¶ 67.  According to plaintiffs, a Pella representative named "Bill" denied their request and informed them that Pella was "understaffed and did not have the resources necessary to paint the Windows."  Id. ¶ 68. "Bill offered to refund the $95.00 labor charge Plaintiffs paid to replace the kitchen Window if Plaintiffs painted the Windows themselves."  Id. ¶ 69.[1]

Plaintiffs allege that in August 2010, while preparing to paint the windows, they "noticed that the glazing failed in all of the casement Windows, allowing water to penetrate[,]" causing mold, mildew, and other damage to the windows.  Id. ¶ 71. Plaintiffs then filed a third warranty claim in September 2010 and "sent a letter via

---

[1]      Plaintiffs originally alleged that the first warranty claim concerned a bedroom window, but later represent that it was a kitchen window.  While it is unclear whether the initial request concerned a bedroom or a kitchen window, the fact is not germane to the court's disposition of the present motion.

certified mail to Pella informing it that the glazing had failed and request[ing] that Pella replace all of the casement Windows." Id. ¶ 72.  Plaintiffs allege that although Pella received the letter that same month, it never responded to the third warranty claim.  Id. ¶ 73.  Plaintiffs further allege that in October 2010, they contacted Pella via email informing it of the problems with the casement and requesting replacement but that Pella never responded.  Id. ¶¶ 74–75.  Plaintiffs allege that in February 2011, they went to a Pella store in South Portland, Maine and spoke with Monica Nieto ("Nieto") who informed plaintiffs "that she was unable to assist them with their warranty claim." Id. ¶ 76.  Nieto also said she sent a copy of a letter from plaintiffs to Pella's Service Department via facsimile.  Id. ¶¶ 76–78.  Plaintiffs allege that Pella never replaced the defective casement windows as requested under the third warranty claim.  Id. ¶ 80.

On September 2, 2014, plaintiffs filed a class action complaint against Pella in the United States District Court for the District of Maine, alleging jurisdiction pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332(d).  Plaintiffs allege that the windows were defective "in that they allowed water penetration, which caused condensation, wood rot, leaks and other failures as described." Id. ¶ 58.  Plaintiffs contend that the windows "allowed water to intrude into Plaintiffs [sic] home resulting in other property damage to their home, such as the structure of their home, wall cavity, adjoining finishes and walls and damaged other personal property within the home." Id. ¶ 60.  Plaintiffs bring the following causes of action:  (1) violation of the Maine Unfair Trade Practices Act ("MUTPA"); (2) negligence; (3) negligent misrepresentation; (4) breach of implied warranty of merchantability; (5) breach of implied warranty of fitness for a particular purpose; (6) breach of express warranty; (7) fraud; (8) fraudulent

concealment; (9) unjust enrichment; (10) violation of Magnuson–Moss Warranty Act

("MMWA"); and (11) declaratory relief pursuant to 28 U.S.C. § 2201.

On September 18, 2014, the United States Judicial Panel on Multidistrict

Litigation transferred the present action to this court as part of the consolidated

multidistrict ligation.  Pella filed the instant motion to dismiss on November 3, 2014.

Plaintiffs filed a response in opposition to Pella's motion on November 20, 2014, and

Pella replied on December 4, 2014.  The motion has been fully briefed and is now ripe

for the court's review.

## II.  STANDARD

### A.      Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for

"failure to state a claim upon which relief can be granted."  When considering a Rule

12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true

and draw all reasonable inferences in the plaintiff's favor.  See E.I. du Pont de Nemours

& Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the

court's task is limited to determining whether the complaint states a "plausible claim for

relief."  Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of

the claim showing that the pleader is entitled to relief," "a formulaic recitation of the

elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting

4

Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

**B.     Applicable Law**

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law.  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 416 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  "In multidistrict litigation, the law of the transferee circuit governs questions of federal law."  In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010), modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013), vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit).  Therefore, this court must apply Maine substantive law and Fourth Circuit procedural law.

### III.  DISCUSSION

Pella asserts that plaintiffs' complaint should be dismissed in its entirety.  The court will first determine whether the applicable statutes of limitation are tolled by equitable tolling or equitable estoppel.  The court will then consider Pella's arguments regarding each claim individually.

### A.    Tolling

Pella argues that some of plaintiffs' claims are barred by their respective statutes of limitation.  While the specific statutes of limitation applicable to those claims will be discussed below, the parties disagree about the application of two tolling doctrines to the statutes of limitation:  equitable tolling/fraudulent concealment and class action tolling. The court will consider these doctrines in turn.

### 1.  Fraudulent Concealment

Plaintiffs first argue that the applicable statute of limitations is set forth in 14 M.R.S.A. § 859 and not 14 M.R.S.A. § 752 because they allege that Pella fraudulently concealed the window defect.  Pls.' Resp. 15–16.  In response, Pella argues that plaintiffs have failed to plead sufficient facts to allege fraudulent concealment and that plaintiffs do not allege that they have a fiduciary relationship with Pella.  Therefore, Pella argues that plaintiffs have not adequately pleaded that Pella concealed a cause of action from them within the meaning of 14 M.R.S. § 859.  Def.'s Reply 1–2.

Under Maine law, an action that is fraudulently concealed by the defendant is timely if it is commenced within six years after the person entitled to bring suit discovers the claim.  14 M.R.S.A. § 859.  "To establish a claim of fraudulent concealment, the plaintiff must show:  '(1) that defendants actively concealed material facts from [plaintiff] and that [plaintiff] relied on their acts and statements to her detriment; or (2) that a special relationship existed between the parties that imposed a duty to disclose the cause of action, and the failure of defendants to honor that duty.'"   Siegemund v. Shapland, 307 F. Supp. 2d 113, 116–17 (D. Me. 2004) (quoting Harkness v. Fitzgerald, 701 A.2d 370, 372 (Me. 1997)).  "A fiduciary relationship, such as that of guardian to ward, is a

'special relationship.'" Id. (quoting Brawn v. Oral Surgery Assoc., 819 A.2d 1014, 1026 (Me. 2003)). Under Maine law, the heightened pleading standard of Rule 9(b) applies to fraudulent concealment claims and therefore "the circumstances constituting fraud . . . shall be stated with particularity." In re Compact Disc Minimum Advertised Price Antitrust Litig., 138 F. Supp. 2d 25, 28 (D. Me. 2001).

However, many courts have recognized the difficulty of applying Rule 9(b)'s particularity requirement to fraudulent concealment or omission claims and have instead applied a relaxed, less formulaic version of the rule. See, e.g., Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 533 (D. Md. 2013) (holding that Rule 9(b) is "less strictly applied" with respect to claims of fraud by omission of material facts, because "an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation"); Carideo v. Dell, Inc., 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) ("The Rule 9(b) standard is relaxed in fraudulent omission cases" because in such cases, "a plaintiff will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." (internal quotation marks omitted)); In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) ("Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission."); Bonfield v. AAMCO Transmissions, Inc., 708 F. Supp. 867, 875 (N.D. Ill. 1989) ("Like Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to the time, place,

and contents of the false representations or the identity of the person making the misrepresentation." (internal quotation marks omitted)).

Although the Fourth Circuit has not adopted this relaxed Rule 9(b) standard, a relaxed standard comports with the Fourth Circuit's instruction that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Additionally, the court finds the reasoning supporting a relaxed standard persuasive and therefore will apply it to plaintiffs' fraud-based claims to the extent they assert fraudulent omissions or concealment.

Plaintiffs allege that Pella failed to disclose the defective nature of the windows. Compl. ¶ 89–97. Plaintiffs further allege that Pella had a duty to disclose the defective condition of the windows to plaintiffs and that plaintiffs could not have known that the windows were defective through the exercise of reasonable diligence. Id. The court finds that plaintiffs have sufficiently alleged fraudulent concealment to toll the statute of limitations under § 859. Therefore, the statute of limitations is tolled until September 2010 when plaintiffs discovered the defective condition of the windows.

## 2. Equitable Estoppel

In Hanusek v. Southern Maine Medical Center, 584 A.2d 634 (Me. 1990), the Supreme Judicial Court of Maine first recognized that estoppel may be used to prevent the affirmative defense of the statute of limitations if the elements of estoppel are present. Id. at 636. "[E]quitable estoppel applies when a plaintiff who knows of his cause of

8

action reasonably relies on the defendant's conduct or statements in failing to bring suit."
Nulankeyutmonen Nkihtaqmikon v. Impson, 573 F. Supp. 2d 311, 328 (D. Me. 2008)
(quoting Ramirez–Carlo v. United States, 496 F.3d 41, 48 (1st Cir. 2007), aff'd sub nom.
Nkihtaqmikon v. Impson, 585 F.3d 495 (1st Cir. 2009)).  Equitable estoppel "is not
employed unless the plaintiff relies on his or her adversary's conduct and changes his or
her position for the worse."  Id. at 327 (quoting Kelley v. NLRB, 79 F.3d 1238, 1247–48
(1st Cir. 1996)).

 "The Supreme Court has explained that a party seeking to assert equitable
estoppel must demonstrate that (1) the party to be estopped made a definite
misrepresentation of fact to another person having reason to believe that the other
[would] rely upon it; (2) the party seeking estoppel relied on the misrepresentations to its
detriment; and (3) the reliance [was] reasonable in that the party claiming the estoppel did
not know nor should it have known that its adversary's conduct was misleading.  Id.
(quoting Ramirez-Carlo, 496 F.3d at 49). "[E]quitable estoppel applies when a plaintiff
who knows of his cause of action reasonably relies on the defendant's conduct or
statements in failing to bring suit.  Ramirez-Carlo, 496 F.3d at 48 (citing Vistamar, Inc. v.
Fagundo–Fagundo, 430 F.3d 66, 73 (1st Cir. 2005)).

 The Supreme Judicial Court of Maine, explaining the doctrine of equitable
estoppel, has stated that:

> The gist of an estoppel barring the defendant from invoking the defense of
> the statute of limitations is that the defendant has conducted himself in a
> manner which actually induces the plaintiff not to take timely legal action
> on a claim.  The plaintiff thus relies to his detriment on the conduct of the
> defendant by failing to seek legal redress while the doors to the courthouse
> remain open to him.  Only upon a demonstration that the plaintiff had in
> fact intended to seek legal redress on his claim during the prescriptive

> period can his failure to file suit be specifically attributed to the
> defendant's conduct.

Dasha v. Me. Med. Ctr., 665 A.2d 993, 995 (Me. 1995) (quoting Townsend v. Appel, 446

A.2d 1132, 1134 (Me. 1982)) (emphasis added).  The court has further stated that the

doctrine should be applied carefully and sparingly.  Id. (citing Vacuum Sys., Inc. v.

Bridge Constr. Co., 632 A.2d 442, 444 (Me. 1993)).  "Proper application of the doctrine

of equitable estoppel rests on the factual determination that the declarations or acts relied

upon must have induced the party seeking to enforce the estoppel to do what resulted to

his detriment, and what he would not otherwise have done."  Id. (quoting Shackford &

Gooch, Inc. v. Town of Kennebunk, 486 A.2d 102, 105–06 (Me. 1984)).

　　　Plaintiffs argue that Pella's assertions that the damage to the windows was caused

by unpainted edges and its repeated delay in responding to their warranty claims caused

them to delay filing the present action.  Pls.' Resp. 16.  Plaintiffs allege that a Pella

representative inspected their home and informed them that the damage was caused by

water penetrating through the unpainted window edges rather than a defect in the

windows.  Compl. ¶¶ 94–95.  Plaintiffs further allege that they reasonably and justifiably

relied on Pella's representation as to the cause of the damage.  Id. ¶ 95.  Therefore,

plaintiffs argue that Pella should be equitably estopped from asserting the statute of

limitations as a defense.

　　　However, there is no indication that plaintiffs intended to seek legal redress prior

to September 2010 but relied upon the Pella representative's representations in not

bringing suit.  Therefore, recognizing that the doctrine of equitable estoppel should be

applied sparingly, the court finds that plaintiffs have failed to allege sufficient facts to

apply the doctrine of equitable estoppel.  See Dasha, 665 A.2d at 995 ("Only upon a

10

demonstration that the plaintiff had in fact intended to seek legal redress on his claim during the prescriptive period can his failure to file suit be specifically attributed to the defendant's conduct.").

## B. Count I—Violation of MUTPA

Pella argues that plaintiffs' MUPTA claim must be dismissed because they failed to plead the claim with sufficient particularity as required under Federal Rule of Civil Procedure 9(b). In response, plaintiffs argue that the heightened pleading standard does not apply to their MUTPA claim because it is not based on fraud but rather on unfair methods of competition. Pls.' Resp. 4.

Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead fraud claims with particularity. A plaintiff must specify the time, place, and content of the allegedly fraudulent acts. S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010). This is true of both federal- and state-law claims involving fraud. N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). Rule 9(b) ensures that defendants have adequate notice of the conduct complained of, protects them from frivolous suits, eliminates fraud actions in which all the facts are learned after discovery, and protects defendants from harm to their goodwill and reputation. Harrison, 176 F.3d at 784 (citation omitted). In order to satisfy Rule 9(b), the complaint must allege the "who, what, when, where and how of the alleged fraud," U.S. ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir. 2014), or the "first paragraph of any newspaper story," Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 995 (8th Cir. 2007); see also U.S. ex rel. Elms v. Accenture LLP, 341 F. App'x 869, 872 (4th Cir. 2009) (holding Rule 9(b) requires a plaintiff to allege "the time, place, and contents of the false representations, as

well as the identity of the person making the misrepresentation and what he obtained thereby").

Claims under the MUTPA that are premised on fraud must be pleaded with particularity.  See Everest v. Leviton Mfg. Co., 2006 WL 381832, at *3 (Me. Super. Jan. 13, 2006) (holding that plaintiff's claims under the MUTPA and for unjust enrichment are premised on fraud and therefore must be pleaded with particularity).  The First Circuit has interpreted cases within its circuit and in other circuits to read "Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud." Cardinale, 567 F.3d at 15 (emphasis added) (citing Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985); Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 723 (5th Cir.), modified, 355 F.3d 356 (5th Cir. 2003); Frota v. Prudential–Bache Sec., Inc., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986)).  "Rule 9(b) is intended to set a higher than normal threshold of specificity in factual allegations before the discovery machinery can be set in motion."  Id. at 16.

Plaintiffs contend that the heightened pleading standard does not apply to their MUTPA claim because it is not based in fraud.  Pl.'s Resp. 4.  However, plaintiffs are arguing out of both sides of their mouths.  On one hand, they argue that the statute of limitations under § 859 applies because Pella fraudulently concealed the window defect. On the other hand they argue that Rule 9(b)'s heightened pleading standard does not apply because their MUTPA claim is not based in fraud.  Plaintiffs cannot have the best of both worlds.

Plaintiffs' MUTPA claim is based in both fraud and negligence.  Plaintiffs allege that Pella failed to disclose material facts in connection with the sale of the windows and

that Pella "tended to mislead or deceive" plaintiffs and other class members.  Compl. ¶
110.  Plaintiffs further allege that Pella failed to give adequate warnings and notices of
the defect "despite the fact that Pella knew or should have known of this defect, with the
intent that Plaintiffs and the Class Members would rely upon Pella's failure to disclose
the defect when purchasing the Windows."  Id. ¶ 111. According to the complaint, "Pella
knew of the defective nature of the Windows and yet continued to sell and distribute
them to Class members and concealed its known defects from them."  Id.  The core of
plaintiffs' allegations charge that Pella failed to disclose the known defect in the windows
with the intent that purchasers would rely upon its failure to disclose in purchasing the
windows.  Thus, Rule 9(b)'s heightened pleading standard applies to plaintiffs' MUTPA
claim because it is based in fraud.

        The court must next consider whether plaintiffs' complaint meets the heightened
standard.  Plaintiffs allege that in April 2001, they went to a Pella location in South
Portland, Maine to select windows for their home.  Id.  ¶ 53.  According to the complaint,
a Pella sales representative, Peter Dardano, provided assistance in choosing the windows,
answered their questions, and "touted the features and quality of Pella Windows."  Id.
¶ 53.  Plaintiffs further allege that they purchased Architect Series windows from Pella in
April 2001 in reliance on the Pella representative's representations.  Id. ¶ 57.  Plaintiffs
contend that Pella knew that its windows were defective but failed to disclose such
information. The court finds that plaintiffs' individual MUTPA claim relating to the sale
of their windows is sufficiently pled.

        The allegations supporting plaintiffs' class claim for MUPTA, however, do not
meet the heightened pleading standard under Rule 9(b).  Plaintiffs allege that "Pella"

failed to disclose material facts about the defective condition of the windows and its

failure to comply with applicable building codes.  Thus, plaintiffs' MUTPA claim is

based on fraudulent <u>omissions</u> rather than assertions.  Many courts have recognized the

difficulty of applying Rule 9(b)'s particularity requirement to fraudulent concealment or

omission claims and have instead applied a relaxed, less formulaic version of the rule.

<u>See, e.g.</u>, <u>Ademiluyi</u>, 929 F. Supp. 2d at 533; <u>Carideo</u>, 706 F. Supp. 2d at 1133;

<u>Whirlpool Prods. Liab. Litig.</u>, 684 F. Supp. 2d at 961; <u>Bonfield</u>, 708 F. Supp. at 875.

Although the Fourth Circuit has not adopted this relaxed Rule 9(b) standard, a

relaxed standard comports with the Fourth Circuit's instruction that "[a] court should

hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the

defendant has been made aware of the particular circumstances for which she will have to

prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of

those facts."  <u>Harrison</u>, 176 F.3d at 784.  Additionally, the court finds the reasoning

supporting a relaxed standard persuasive and therefore will apply it to plaintiffs' fraud-

based claims to the extent they assert fraudulent omissions or concealment.

Whether plaintiffs' allegation of fraudulent omissions satisfies the relaxed Rule

9(b) standard is a closer question.  Plaintiffs' amended complaint is not overly detailed,

but, as described above, the nature of a fraudulent omission makes it difficult to plead

with detail.  In a case with similar facts, a Maryland district court held that the plaintiffs

had properly pleaded fraudulent concealment with particularity where they alleged:  that

the defendant was aware of a product defect and how the defendant became aware of the

defect; that the defendant concealed the defect from the plaintiffs; and that the plaintiffs

would have taken different actions had they known about the defect.  <u>Doll v. Ford Motor</u>

14

<u>Co.</u>, 814 F. Supp. 2d 526, 538–39 (D. Md. 2011); <u>see also</u> <u>Whirlpool Corp.</u>, 684 F. Supp.

2d at 961.

Since plaintiffs have pleaded facts similar to those alleged in <u>Doll</u>—that Pella was

aware of a defect, that Pella concealed the defect from consumers, and that plaintiffs

would have taken different action had they known about the defect—the court denies

Pella's motion to dismiss plaintiffs' MUTPA claim to the extent they are based on

fraudulent omissions.

### C.  Count II—Negligence

Pella argues that plaintiffs' negligence claim should be dismissed because it is

barred by the economic loss rule.  Def.'s Mot. 6.  In response, plaintiffs argue that the

economic loss rule does not bar recovery.  Pl.'s Resp 4–5.

Maine applies the economic loss doctrine to generally bar tort recovery for a

product's damage to itself.  <u>Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree</u>

<u>Doors</u>, 659 A.2d 267, 270 (Me. 1995).  Under Maine law, the economic loss rule:

> marks the fundamental boundary between the law of contracts, which is
> designed to enforce expectations created by agreement, and the law of
> torts, which is designed to protect citizens and their property by imposing
> a duty of reasonable care on others. In order to preserve the bright line
> between contract and tort law, the rule prohibits the recovery of purely
> economic losses in tort actions. Economic loss has been defined as
> damages for inadequate value, costs of repair and replacement of defective
> product, or consequent loss of profits—without claim of personal injury or
> damage to other property.

<u>Fireman's Fund Ins. Co. v. Childs</u>, 52 F. Supp. 2d 139, 142 (D. Me. 1999).  As explained

by the court in <u>Oceanside</u>, the rationale "is that damage to a product itself 'means simply

that the product has not met the customer's expectations, or, in other words, that the

customer has received insufficient product value.  The maintenance of product value and

quality is precisely the purpose of express and implied warranties."'  Oceanside, 659 A.2d at 270.  However, the economic loss rule does not generally extend to tort claims that seek recovery for damage to property <u>other than</u> the defective product itself.  <u>Id.</u> (emphasis added).

While Pella does recognize that plaintiffs have alleged damage to other property, it argues that plaintiffs do so in a conclusory manner and that plaintiffs' failure to adequately plead sufficient facts requires dismissal.  Def.'s Mot. 7.  In a similar multidistrict litigation involving windows, this court determined that allegations of damage to "other property" were "too vague" to survive the economic loss rule, while allegations of damage to "other personal property," although "by no means highly detailed," properly stated a claim for negligence.  <u>Hildebrand v. MI Windows & Doors, Inc.</u>, 908 F. Supp. 2d 720, 726 (D.S.C. 2012).

Plaintiffs allege that the windows were defective "in that they allowed water penetration, which caused condensation, wood rot, leaks and other failures as described." <u>Id.</u> ¶ 58.  According to the complaint, the windows "allowed water to intrude into Plaintiffs [sic] home resulting in other property damage to their home, such as the structure of their home, wall cavity, adjoining finishes and walls and damaged other personal property within the home."  <u>Id.</u> ¶ 60.  The court holds that plaintiffs have sufficiently alleged damage to other property.  Therefore, to the extent that plaintiffs seek recovery in negligence for damage to the windows themselves, the claim fails.  However, to the extent that plaintiffs seek recovery in negligence for damage to other property, including the damage outlined in the complaint, the claim survives Pella's motion to dismiss.

### D.  Count III—Negligent Misrepresentation

Pella argues that plaintiffs' negligent misrepresentation claim should be dismissed because plaintiffs failed to meet the pleading requirements of Rule 9(b).  Def.'s Mot. 7. In response, plaintiffs argue that the heightened pleading standard does not apply because the negligent misrepresentation claim is not based on fraud.  Pls.' Resp. 7.

The Law Court of Maine has adopted the Restatement's formulation of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Rand v. Bath Iron Works Corp., 832 A.2d 771, 774 (Me. 2003) (quoting Restatement (Second) of Torts § 552(a)(1) (1977)).  "The First Circuit's reading of Rule 9(b) to cover associated claims where the core allegations effectively charge fraud derives from Hayduk v. Lanna, in which the court required that claims of fraud and conspiracy to commit fraud satisfy the heightened pleading standard."  Enercon v. Global Comput. Supplies, Inc., 675 F. Supp. 2d 188, 198 (D. Me. 2009) (citing Hayduk, 775 F.2d 441, 443 (1st Cir. 1985) (noting that "in cases in which fraud lies at the core of the action, [Rule 9] does not permit a complainant to file suit first, and subsequently to search for a cause of action" (emphasis in original) (internal quotation marks omitted)).

As more fully outlined above, the court finds that the core of plaintiffs' allegations is sounded in fraud.  However, because plaintiffs' claims are based on Pella's failure to disclose the window defect, the court applies the more lenient Rule 9(b) standard.  For the same reasons outlined under Section B above, the court finds that

plaintiffs have sufficiently pled that Pella knew of the defect in the windows, that Pella failed to disclose the defect, and that plaintiffs would not have purchased the windows had Pella disclosed the defect.  Plaintiffs' allegations in this regard are sufficient to satisfy the more lenient standard applied by many courts to fraudulent omission claims.

Therefore, the court denies Pella's motion to dismiss plaintiffs' negligent misrepresentation claim.

### E. Statute of Limitations as it Applies to Count IV, V, and VI—Breach of the Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose, and Breach of Express Warranties

Pella argues that plaintiffs' breach of implied warranty claims and breach of express warranty claim should be dismissed because they are time-barred.  Def.'s Mot. 8. In response, plaintiffs argue that the breach of express warranty claim did not accrue until a breach occurred in 2010 when Pella failed to repair or replace the windows.  Pls.' Resp. 8.  Plaintiffs further argue that Pella's express warranty extends to future performance. Id.

"An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued."  Me. Rev. Stat. tit. 11, § 2-725.  "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  Id.  "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  Id. (emphasis added); see also Oceanside, 659 A.2d at 272 ("The statute of limitations applying to most breach of warranty claims is four years from the date of accrual, which occurs 'when tender of

18

delivery is made.'" (quoting § 2-725(2)).[2]  Therefore, plaintiffs' cause of action for breach of warranty accrued in April 2001 when they purchased the windows.  As such, the statute of limitations expired in April 2005, four years after any alleged breach occurred.  However, if plaintiffs can establish that Pella's warranty explicitly extended to future performance of the goods, then the cause of action accrues when the breach is or should have been discovered.

　　While the First Circuit has not clearly stated that implied warranties never extend to future performance, most other circuit courts have held that implied warranties, by their very nature, never explicitly extend to future performance.  See, e.g., Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 879 (8th Cir. 2000) ("Implied warranties cannot, by their very nature, explicitly extend to future performance."); W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc., a Div. of Reichhold Chemicals, Inc., 23 F.3d 1547, 1550 (9th Cir. 1994) (same); Stumler v. Ferry-Morse Seed Co., 644 F.2d 667, 669 (7th Cir. 1981) ("[I]mplied warranties by definition cannot explicitly extend to future performance."); Clark v. DeLaval Separator Corp., 639 F.2d 1320, 1325 (5th Cir. 1981) (same); Standard Alliance Indus., Inc. v. Black Clawson Co., 587 F.2d 813, 820 (6th Cir. 1978) (same); see also Cuthbertson v. Clark Equip. Co., 448 A.2d 315, 321 (Me. 1982) ("[O]nly an explicit warranty of future performance may be enforced." (citing 11 M.R.S.A. § 2-725(2) (Supp.1981))).  The breach of implied warranty causes of action accrued at the date of purchase, April 2001, and therefore expired in 2005, four years after the action accrued.  See Me. Rev. Stat. tit. 11, § 2-725 ("A breach of warranty

---

[2]　　Plaintiffs argue that Maine's general six-year statute of limitations applies.  Pl.'s Resp. 8.  However, it is clear that the four-year statute of limitations applies to the sale of goods.  See Me. Rev. Stat. tit. 11, § 2-725.  Plaintiffs do not cite a single case applying a six-year statute of limitations to a breach of warranty claim involving the sale of goods.  Therefore, their argument is without merit.

occurs when tender of delivery is made . . . .").  Therefore, the court dismisses plaintiffs' breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose claims (Counts IV and V) as time-barred.

"An express warranty is created when 'any affirmation of fact or promise made by the seller to the buyer which relates to the goods . . . becomes part of the basis of the bargain,' 11 M.R.S.A. § 2-313(1)(a) (Supp.1981), or when any description of the goods 'is made part of the basis of the bargain.'"  Cuthbertson, 448 A.2d at 320 (quoting 11 M.R.S.A. § 2-313(1)(b) (Supp. 1981)).  Plaintiffs argue that the limited warranty extended to future performance, as did express warranties on promotional materials such as brochures, owner's manuals, and advertisements.

The limited warranty states:

If a defect in materials or workmanship . . . is brought to our attention during the first 10 years from the date of sale, Pella Corporation will, at its option:  (1) Repair the product *(After the first two years, there will be a charge for labor, but any repair parts will be provided free of charge during the entire warranty period.)*; (2) Provide replacement part(s) or product(s) *(If replacement is elected, the replacement part(s) or product(s) will be shipped to the retailer where the product was purchased.)*; or (3) If we determine that repair or replacement is not practicable, we may elect to refund the original purchase price.

Def.'s Mot. Ex. 1.  The limited warranty also contains an integration clause that states:

The warranties detailed in this document are the only statements of the legal responsibility of Pella Corporation . . . with respect to covered Pella products manufactured on or after October 1, 1996 . . . . No one is authorized to make any different or additional warranties.

Pella argues that the warranty does not extend to future performance but rather is only a repair or replace warranty.  "To determine whether a warranty is one of future performance, we must look to the language of the warranty itself to determine whether it

20

explicitly guarantees the future performance of the goods." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 323 (1st Cir. 2008) (applying Massachusetts law and recognizing that the Supreme Judicial Court of Massachusetts has not discussed the proper application of the future performance requirement of § 2-725 of the UCC).  While a warranty that states that the product will be free from defects in materials and workmanship for a period of five years explicitly extends to future performance, a warranty that states "we promise to repair the product if it malfunctions within the first five years" does not explicitly guarantee the future performance of the goods.  Id.  "This type of repair promise warrants the future performance of the warrantor, not the goods" and "has not guaranteed that the goods will not malfunction in the future, but rather that the warrantor will remedy any problems that arise in a particular way for a limited period of time."  Id. at 323–24 (citing a collection of cases from other circuits and districts to support the proposition).

In Trans-Spec, the First Circuit interpreted the following language in a limited warranty:  "This service contract . . . provides full components and labor coverage for covered component failures due to defects in . . . materials or workmanship under normal use."  Id. at 324.  The court held that the warrantor never warranted that the engines would not fail, but merely that it would pay to repair them should they fail.  Id.  "As such, the warranty provided in the [contract] [was] not a warranty that explicitly extends to the future performance of the goods, and the later accrual date specified in § 2–725(2) does not apply."  Id.  Therefore, the court dismissed the express warranty claim as time-barred. Id.

Similarly, courts outside of Maine and the First Circuit, interpreting an identical

provision of the Uniform Commercial Code, have held that a repair or replace warranty

does not explicitly extend to future performance.  See, e.g., Holbrook, Inc. v. Link-Belt

Const. Equip. Co., 12 P.3d 638, 643 (Wash. Ct. App. 2000) ("Underlying [a] warranty to

make needed repairs is the assumption that the goods may fall into disrepair or otherwise

malfunction.  No warranty that the goods will not, is to be inferred from the warranty to

make needed repairs."); Neb. Popcorn, Inc. v. Wing, 602 N.W.2d 18, 23 (Neb. 1999)

("[T]he majority of other jurisdictions have found that a warranty given by a

manufacturer or seller 'to repair or replace' does not constitute an explicit warranty of

future performance of goods . . . and therefore the promise to repair or replace does not

extend the commencement of the running of the statute of limitations.").  In Nebraska

Popcorn, the Nebraska Supreme Court determined that the following repair or replace

warranty did not extend to future performance:  "[Manufacturer] warrants . . . that it will

repair or replace . . . any load cell supplied with a motor truck scale which . . . is defective

in material or workmanship for a period of two (2) years from the date of the original

shipment."   602 N.W.2d at 21, 25.

The limited warranty at issue here is a "repair or replace" warranty similar to that

in Nebraska Popcorn and does not clearly, unambiguously, and unequivocally guarantee

the future performance of the windows.  Additionally, to the extent plaintiffs allege that

Pella provided express warranties outside the limited warranties, including on its website,

and marketing materials, Am. Compl. ¶¶ 29–34, the amended complaint contains no

indication that these "warranties"—assuming they are warranties at all—explicitly extend

to future performance.  Therefore, the court dismisses plaintiffs' breach of express

warranty and MMWA claims as time-barred to the extent they rely on warranties that the windows are free from defects.

Further, even if the express warranties did extend to future performance, plaintiffs' breach of express warranty claims accrued by August 2010 at the latest and expired four years later in August 2014. Plaintiffs made their first warranty claim in June 2010, albeit only for one window, after noticing that the frame of the window "rotted and fell apart." Compl. ¶ 61. In August 2010, plaintiffs filed their second warranty claim, requesting that Pella paint the edges of all of their windows. Plaintiffs allege that in August 2010, while preparing to paint the windows, they "noticed that the glazing failed in all of the casement Windows, allowing water to penetrate" and discovered mold, mildew, and other damage to the windows. Id. ¶ 71. In September 2010, plaintiffs made their third warranty claim after noticing that the glazing failed in all of the casement windows, allowing water to penetrate, and discovering mold and mildew along the edges. Compl. ¶ 71. The court finds that plaintiffs' cause of action for breach of warranty for defective windows accrued in August 2010 when they noticed the water penetrating the windows and discovered the mold along the edges of the window frame. Prior to August 2010, plaintiffs only noticed wood rot in one window and that the edges of all of their windows were not painted. Plaintiffs did not file the present action until September 2014, one month after the statute of limitations expired. Therefore, even if the court were to determine that the limited warranty extends to future performance, the claim would be barred by the statute of limitations

Plaintiffs also argue that Pella warranted that it complied with all applicable codes and standards, including ASTM E2136-04, and that the warranty extended to future

performance because the anticipated life of the windows is twenty to twenty-five years. Compl. ¶¶ 36–38, 212. Further, plaintiffs allege that the representations formed part of the basis of the bargain at the time of sale. Id. ¶ 174. It is unclear where this alleged express warranty can be found. However, at this stage, based on the allegations in the complaint, the court finds that plaintiffs have adequately pled a breach of express warranty claim for failure to comply with standards that extend to future performance.

Plaintiffs further argue that Pella breached the express repair or replace warranty. Courts have held that a breach of express warranty claim necessarily must accrue before the warranty period expires. See Owen v. Gen. Motors Corp., 533 F.3d 913, 919 (8th Cir. 2008) ("The cause of action for breach of an express warranty begins to accrue upon discovery only if the defect is, or should have been, discovered within the warranty period; at the latest, the cause of action begins to accrue on the date when the express warranty expires."); S. Jersey Gas Co. v. Mueller Co., 2010 WL 1742542, at *7 (D.N.J. Apr. 27, 2010) (holding that discovery of breach necessarily must occur during the warranted period). Here, plaintiffs allege that they purchased the windows in April 2001. Compl. ¶ 57. Therefore, the limited warranty, which promised to repair or replace defective windows, expired in 2011. Plaintiffs discovered the breach in September 2010, before the warranty period expired. Therefore, the limitations period for plaintiffs' breach of express warranty claim for failure to repair or replace did not expire before plaintiffs filed the present action in September 2014. As such, the court denies Pella's motion to dismiss as it pertains to plaintiffs' claim for breach of express warranty for failure to repair or replace.

For the reasons set forth above, the court grants Pella's motion to dismiss plaintiffs' breach of implied warranty of merchantability and fitness for a particular purpose claims. The court denies Pella's motion to dismiss plaintiffs' express warranty claim to the extent it pertains to Pella's alleged failure to repair or replace, but the court grants Pella's motion to dismiss plaintiffs' breach of express warranty claim, to the extent it relies on the limited warranty, as time-barred.

### F.  Count VI—Breach of Express Warranty

Pella argues that plaintiffs' breach of express warranty claim fails because plaintiffs failed to state a claim for breach of warranty, with one exception.  Def.'s Mot. 16.

Plaintiffs' remaining breach of express warranty claims rely on the "repair or replace" language of the limited warranty and Pella's alleged failure to comply with applicable standards.  Def.'s Mot., Ex. 1.  Plaintiffs' allege that Pella refused to paint the window edges in response to its August 2010 warranty request and failed to respond to its September 2010 warranty request.  Pl.'s Resp. 11.  Pella concedes that the allegation relating to the September 2010 warranty request supports a breach of warranty claim but argues that plaintiffs' other allegations do not support the claim.  However, the court finds that plaintiffs have adequately pled a breach of express warranty claim relating to Pella's alleged failure to comply with the limited warranty in August 2010 and September 2010.

Plaintiffs also allege that Pella warranted that it complied with all applicable codes and standards, including ASTM E2136-04, and that the warranty extended to future performance because the anticipated life of the windows is twenty to twenty-five years.

Compl. ¶¶ 36–38, 212.  Further, plaintiffs allege that the representations formed part of the basis of the bargain at the time of sale.  Id. ¶ 174.  Plaintiffs allege that Pella failed to comply with the applicable standards and thereby breached the express warranty.  The court finds that plaintiffs have adequately pled a breach of express warranty claim for failure to comply with  applicable standards to survive a motion to dismiss.

Therefore, the court denies Pella's motion to dismiss plaintiffs' breach of express warranty claim and MMWA claim as they pertain to Pella's alleged failure to repair or replace the windows in accordance with the terms of the limited warranty.  The court further denies Pella's motion to dismiss plaintiffs' breach breach of the express warranty and MMWA claim as they pertain to Pella's alleged failure to comply with applicable standards that explicitly extend to future performance.

### G.  Count VII and VIII—Fraud and Fraudulent Concealment

Pella argues that plaintiffs' fraudulent concealment claim should be dismissed because it fails to plead fraud with the particularity required by Rule 9(b).  Def.'s Mot. 19.

As discussed above, many courts have recognized the difficulty of applying Rule 9(b)'s particularity requirement to fraudulent concealment or omission claims and have instead applied a relaxed, less formulaic version of the rule.  See, e.g., Ademiluyi, 929 F. Supp. 2d at 533; Carideo, 706 F. Supp. 2d at 1133; In re Whirlpool Prods. Liab. Litig., 684 F. Supp. 2d at 961; Bonfield, 708 F. Supp. at 875.

Although the Fourth Circuit has not expressly adopted this relaxed Rule 9(b) standard, a relaxed standard comports with the Fourth Circuit's instruction that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the

26

defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." <u>Harrison</u>, 176 F.3d at 784. Therefore, in accordance with the courts' analysis under Sections B and D above, the court applies the more relaxed Rule 9(b) standard to plaintiffs' fraud-based claims to the extent they allege fraudulent omissions or concealment.

In a case with similar facts, a Maryland district court held that the plaintiffs had properly pleaded fraudulent concealment with particularity where they alleged: that the defendant was aware of a product defect and how the defendant became aware of the defect; that the defendant concealed the defect from the plaintiffs; and that the plaintiffs would have taken different actions had they known about the defect. <u>Doll</u>, 814 F. Supp. 2d at 538–39; <u>see also</u> <u>Whirlpool Corp.</u>, 684 F. Supp. 2d at 961. Plaintiffs allege that Pella knew of the defect in the windows and failed to disclose the defect with the intent to mislead and deceive plaintiffs and other class members. Plaintiffs further allege that had Pella disclosed the defect, plaintiffs would not have purchased the windows.

Therefore, in accordance with the court's prior holding relating to plaintiffs' MUTPA claim, the court denies Pella's motion to dismiss as it pertains to plaintiffs' fraud claims.

### H. Count IX—Unjust Enrichment

Pella argues that plaintiffs' unjust enrichment claim should be dismissed because it is time-barred and because plaintiffs have an adequate remedy at law. Defs.' Mot. 22–23. In response, plaintiffs argue that because they have adequately pleaded equitable

remedies invalidating the warranty, they can alternatively plead a claim of unjust enrichment.  Pl.'s Resp. 13.

### 1.  Statute of Limitations

In Maine, the general six-year statute of limitations in civil cases applies to unjust enrichment claims.  In re Estate of Miller, 960 A.2d 1140, 1146 (2007) (citations omitted).  An unjust enrichment claim is brought to recover "the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay."  Id. (quoting Paffhausen v. Balano, 708 A.2d 269, 271 (Me. 1998)). To establish a claim for unjust enrichment, the plaintiff must demonstrate that:  (1) the plaintiff conferred a benefit on the defendant; (2) the defendant had appreciation and knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances that make it inequitable for the defendant to retain the benefit without payment of its value.  Id.

Pella argues that plaintiffs' unjust enrichment claim is time-barred because plaintiffs allege that they conferred a benefit on Pella when they purchased the windows in 2001.  Def.'s Mot. 22.  Therefore, Pella argues that the statute of limitations expired in 2007.  Id.  Plaintiffs, for their part, do not directly address Pella's statute of limitations argument.  It seems that plaintiffs intend to rely on the equitable estoppel and fraudulent concealment arguments to toll the statute of limitations.  See Pls.' Resp. 14–16.  Because the court determined that plaintiffs adequately pleaded fraudulent concealment, the court will toll the statute of limitations until 2010.  Therefore, since plaintiffs filed the present action in 2014, the six-year statute of limitations did not expire.

## 2.  Adequate Remedy at Law

Pella argues that because a contract controls the relationship between the parties, plaintiffs' unjust enrichment claim should be dismissed.  Def.'s Mot. 22.  Pella argues that the limited warranty controls.  Id.  In response, plaintiffs argue that their claims are not solely limited to relief based on the limited warranty.  Pls.' Resp. 13.

"In general, a party is allowed to 'state as many separate claims or defenses as it has, regardless of consistency.'"  In re Light Cigarettes Mktg. Sales Practices Litig., 751 F. Supp. 2d 183, 191 (D. Me. 2010) (quoting Fed. R. Civ. P. 8(d)(3)).  "Although an adequate remedy at law might prevent plaintiffs from eventually prevailing on equitable claims, nothing prevents the plaintiffs from pleading both types of causes of action."  Id. However, in situations where the legal cause of action provides the exclusive remedy, "courts may dismiss claims of unjust enrichment because the legal cause of action precludes parallel equitable claims."  Id. (emphasis added).  If there is a question of whether the exclusive remedy applies, a court must deny a motion to dismiss.  Id.

Under Maine law,

[t]o establish a claim for unjust enrichment, a party must prove (1) that it conferred a benefit on the other party; (2) that the other party had appreciation or knowledge of the benefit; and (3) that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.

Ingram v. Rencor Controls, Inc., 256 F. Supp. 2d 12, 22 (D. Me. 2003) (quoting Howard & Bowie, P.A. v. Collins, 759 A.2d 707, 710 (Me. 2000)).  However, if the parties have dealt with their relationship through contract, relief is not available under an unjust enrichment theory.  Id. ("The existence of a contractual relationship precludes recovery on a theory of unjust enrichment." (quoting Nadeau v. Pitman, 731 A.2d 863, 866–67

(Me. 1999))).  "However, also under Maine law, even if there is an express contract between the parties, if the contract has been rescinded, abandoned, or terminated, or if it is unenforceable or invalid, a party may still obtain an equitable remedy."  Id.

At this stage, the court holds that there is a question of whether the exclusive remedy applies to preclude an unjust enrichment claim.  There is no indication that the limited warranty will provide the exclusive remedy.  If plaintiffs' claims under the limited warranty fail, they may still be entitled to equitable remedies under an unjust enrichment theory.

Therefore, the court denies Pella's motion to dismiss plaintiffs' unjust enrichment claim.

## I.   Count X—Violation of MMWA

Pella argues that plaintiffs' MMWA claim fails because it is time-barred and because plaintiffs' state-law warranty claims fail.

The MMWA does not create a warranty itself but is instead a vehicle for enforcing warranties created by state law.  See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) (holding that MMWA claims "hinge on the state law warranty claims"); Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004) (noting that the MMWA borrows state law causes of action); Carlson v. Gen. Motors Corp., 883 F.2d 287, 291 (4th Cir. 1989) (holding that the MMWA "operates in conjunction with state law to regulate the warranting of consumer products"); Lamont, 569 F. Supp. 2d at 816 (noting that the MMWA "relies on state law to determine whether . . . a warranty arises in the first place").  Because the court denies Pella's motion to

dismiss plaintiffs' express warranty claim as it pertains to Pella's failure to repair or replace, it likewise will not dismiss plaintiffs' MMWA claim.

### J.  Count XI—Declaratory Relief

Pella argues that plaintiffs' declaratory relief claim fails because it lacks a substantive foundation and because plaintiffs have an adequate remedy at law.  Def.'s Mot. 23.

The Declaratory Judgment Act states that

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.  The Declaratory Judgment Act is intended to help parties resolve legal disputes before either party can seek or has sought a coercive remedy through the courts. 10B Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure § 2751 (3d ed. 1998).  Courts have "long recognized the discretion afforded to district courts in determining whether to render declaratory relief."  Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998).

Declaratory relief is inappropriate at this stage, as the merits of plaintiffs' substantive claims have not been adjudicated.  See Kennedy v. MI Windows & Doors, Inc., No. 2:12-cv-2305, 2013 WL 267853, at *6 (D.S.C. Jan. 24, 2013); F.D.I.C. v. OneBeacon Midwest Ins. Co., 883 F. Supp. 2d 754, 761–62 (N.D. Ill. 2012) (dismissing a declaratory relief claim that raised the same issue as a substantive legal claim already before the court); Vill. of Sugar Grove v. F.D.I.C., 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that

substantially overlaps it substantive claims") (internal citations omitted); <u>Monster Daddy</u> <u>LLC v. Monster Cable Prods., Inc.</u>, No. 6:10-cv-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the same legal issues that are already before the court").

Therefore, the court dismisses plaintiffs' claim for declaratory relief.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** Pella's motion to dismiss.  Specifically, the court:  (1) **DENIES** Pella's motion to dismiss plaintiffs' negligence claim seeking recovery for damage to other property; (2) **DENIES** Pella's motion to dismiss plaintiffs' negligent misrepresentation claim to the extent it relies on Pella's alleged omissions and concealment; (3) **GRANTS** Pella's motion to dismiss plaintiffs' implied warranty claims; (4) **GRANTS IN PART** Pella's motion to dismiss plaintiffs' express warranty claim to the extent it relies on the defective condition of the windows and miscellaneous warranties in marketing materials; but (5) **DENIES** Pella's motion to dismiss plaintiffs' express warranty claim to the extent it relies on Pella's alleged breach of the repair or replace warranty and the failure to comply with building codes; (6) **DENIES** Pella's motion to dismiss plaintiffs' fraud and fraudulent concealment claims; (7) **DENIES** Pella's motion to dismiss plaintiffs' unjust enrichment claim; (8) **DENIES** Pella's motion to dismiss plaintiffs' MMWA claim as it relates to the express warranty claims that survive the motion to dismiss; and (9) **GRANTS** Pella's motion to dismiss plaintiffs' request for declaratory relief.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 26, 2015**
**Charleston, South Carolina**